ESTATE OF IDA WRAY NISSEN, DECEASED, WACHOVIA BANK AND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91889. Filed January 16, 1964.

*John M. Minor*, for the petitioner.
*Harvey S. Jackson*, for the respondent.

OPINION

We are here called upon to decide who is entitled to the deduction for the depreciation of the Nissen Building in the years in question. Petitioner takes the position that the estate is entitled to deduct the full amount of the allowable depreciation in each year, whereas respondent contends that the estate may take only such portions as are ratable to the portions of estate's income in each year, allocable to the estate. The language of the statutory deficiency notice is "apportioned between the estate and the estate beneficiaries on the basis of the income of the estate allocable to each."

Prior to the adoption of the Internal Revenue Code of 1954,[1] an estate was entitled in all cases to the full amount of the deduction allowable for depreciation of property owned by it. *Kathryn Titus MacMurray*, 16 T.C. 616 (1951); compare *Baltzell* v. *Mitchell*, 3 F. 2d 428 (C.A. 1, 1925), and *United States* v. *Blow*, 77 F. 2d 141 (C.A. 7, 1935). In 1954, however, Congress added a new provision to the Federal income tax law which states, with respect to the depreciation deduction for property of an estate, as follows:

In the case of an estate, the allowable deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each.[2]

We have been referred to no decisions involving this provision, and we have found none.

Petitioner contends that the new provision is not to be read as requiring the estate involved in this case to share the allowable depreciation deduction with any distributees of income from the estate. Appreciation of petitioner's argument is predicated on an understanding of certain background information concerning the law with respect to trusts.

Since the enactment of the 1928 Revenue Act there has continued to be in effect a provision of Federal income tax law dealing with the allocation of the depreciation deduction in the case of trusts, as follows:

---

[1] Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954 as enacted.

[2] Sec. 167(g), last sentence. Sec. 167(g) has been redesignated sec. 167(h) by sec. 13(c)(1) of the Revenue Act of 1962, 76 Stat. 960.

In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. * * *

This provision was reenacted in the 1954 Code as the sentence of section 167(g) preceding that quoted above dealing with the deduction in the case of an estate.

Part of the legislative history of the 1928 Revenue Act with respect to the apportionment of the depreciation deduction between trusts and their beneficiaries has often been quoted. See, e.g., *Sue Carol*, 30 B.T.A. 443 (1934). In relevant part it states:

In the case of property held in trust, the allowable deduction is to be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the will, deed, or other instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income which is allocable to the trustee and the beneficiaries, respectively. For example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee. The bill contains similar provisions as to the deduction for depletion. * * *

Conf. Rept. No. 1882, 70th Cong., 1st Sess., pp. 11-12 (1928).

It was thus established that a trust created pursuant to an instrument providing for depreciation by way of a requirement that funds be set aside in the nature of a depreciation reserve, before income could be distributed to income beneficiaries, was entitled to the entire deduction for depreciation of property owned by it. See, e.g., *Newbury* v. *United States*, 57 F. Supp. 168 (Ct. Cl. 1944), certiorari denied 323 U.S. 802 (1945). The present regulations provide that the same result should apply where depreciation is allocated to corpus rather than income, in the trust accounting sense, pursuant to requirements of the applicable local law as well as where the governing instrument so directs. Sec. 1.167(g)-1(b), Income Tax Regs.

It is petitioner's contention that the reserve for depreciation of the Nissen Building set aside by the executor in this case was maintained pursuant to mandatory provisions of decedent's will and State law, that the same language as that appearing in the sentence of section 167(g) dealing with allocation of the depreciation deduction in a trust situation must be taken as being applicable to this case, and consequently that petitioner is entitled to the full amount of the allowable deduction.

We are not persuaded to petitioner's view that the executor of this estate was required to maintain a depreciation reserve either by the

terms of decedent's will³ or by the relevant North Carolina Law.⁴ However, we note that the executor and trustee were given incontrovertible discretionary authority by Article XIII of decedent's will "to determine what is principal and what is income and what expenses or other payments shall be charged against principal and what against income," and that the executor did in fact make principal mortgage payments on, and capital additions to the Nissen Building out of income in total amounts, for the 3 years in issue, roughly equal to the total allowable depreciation for those years.

This Court has not had occasion to rule on the question of whether such actual use, as above, or the setting aside of additions to a depreciation reserve by a trustee pursuant to *discretionary* authority to allocate between income and corpus granted by the instrument creating the trust, will entitle the trust to the full amount of the allowable deduction for depreciation;⁵ but section 1.167(g)–1(b)(2), Income Tax Regs., takes the position that such result would follow, at least to the extent an addition to a reserve is in an amount as great as the allowable deduction, and we have indicated that we might so hold if faced directly with the issue. See *Estate of Mary Jane Little*, 30 T.C. 936 (1958).⁶

We need not decide this issue here, but for the sake of disposing of petitioner's arguments, we shall assume that such an addition to a depreciation reserve pursuant to discretionary authority would be as sufficient to entitle a *trust* to the full depreciation deduction under that sentence of section 167(g) dealing with trusts as in the case

---

³ Petitioner argues that the last sentence of Article XIII thereof requires the executor to maintain a reserve for depreciation, citing *Mollie Netcher Newbury*, 26 B.T.A. 101 (1932), and *Newbury* v. *United States, supra.* But even if we should otherwise be willing to extend those cases to apply to the aforesaid language of decedent's will in a proper circumstance, the care taken by decedent to refer to both her estate and the trusts to be created pursuant to her will throughout the rest of Article XIII, coupled with her reference only to the trusts in the last sentence thereof, leads us to conclude that said sentence was intended to apply only after the trusts had been funded upon the settlement of decedent's estate.

⁴ Petitioner cites N.C. Gen. Stat. secs. 37–1 through 37–15, being North Carolina's enactment of the Uniform Principal and Income Act, for the proposition that State law required the maintenance of a depreciation reserve in this case. The Uniform Act has been held not to be applicable to estates under probate, *In re Feehely's Estate*, 179 Or. 250, 170 P. 2d 757 (1946) ; and petitioner's citation of a North Carolina case which says that an administrator is in some senses a trustee, *Pearson* v. *Pearson*, 227 N.C. 31, 40 S.E. 2d 477 (1946), does not satisfy us that the law is otherwise in North Carolina. Regardless of the North Carolina rule on this however, N.C. Gen. Stat. sec. 37–2 provides that any requirement of the Act is to give way to express directions or discretionary authority granted to a trustee to ascertain principal and income in a way that may contravene the apportionments provided by the Act. Article XIII of decedent's will provided her executor or trustee with just such discretionary authority.

⁵ In the only case we have found that has decided the question, the Ninth Circuit has ruled that apportionment of the deduction would be required in such a situation. *Little's Estate* v. *Commissioner*, 274 F. 2d 718 (C.A. 9, 1960), reversing on other grounds 30 T.C. 936 (1958). This is a depletion deduction case, but trust depletion cases are relevant to depreciation deduction cases involving trusts since the history of the comparable depletion deduction provisions has been identical, as is the critical statutory language. See sec. 611(b)(3).

⁶ See footnote 5.

where the governing instrument creating a trust requires such an addition to a reserve. As will become apparent we could not hold the same result to apply where an estate is involved rather than a trust.

It is clear that this case is to be decided under the last sentence of section 167(g), dealing with estates, rather than the sentence dealing with trusts. *Kathryn Titus MacMurray*, 16 T.C. 616, 622 (1951). There is a crucial difference between that language of section 167(g) dealing with trusts and that dealing with estates. In the case of a trust the depreciation deduction is to be apportioned "in accordance with the pertinent provisions of the instrument creating the trust," or, absent such, "on the basis of the trust income allocable to each." But in adding a provision with respect to estates to the tax law, Congress omitted the first of the operative phrases used in the trust provision and merely said that the deduction is to be apportioned "on the basis of the income of the estate allocable to each."

Petitioner argues that the omission from the estate provision of part of the language used in the trust provision is of no significance. He asserts that the legislative history of the Internal Revenue Code of 1954 compels us so to hold.

The provision providing for allocation of the depreciation deduction in the case of an estate was added to the House version of what was to become section 167(g) of the 1954 Code by the Senate Finance Committee. The portion of the Finance Committee's report dealing specifically with this addition is not only of no assistance in determining the significance of the omission, but is clearly erroneous. At S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 206 (1954), it was stated that "No substantive changes are made" to the provisions of the 1939 Code with respect to allocation of the depreciation deduction; whereas in fact the provision concerning allocation of the deduction in the case of an estate was added by the very same committee whose report is quoted.

However, petitioner points to that part of the Senate Finance Committee Report which states, with regard to section 642(e),[7] that:

Under the amendments made by your committee to sections 167 and 611 of the House bill, the allowable deductions for depreciation and depletion are apportioned between an estate and its heirs, legatees, or devisees in accordance with the pertinent provisions of the governing instrument or, in the absence of such provisions on the basis of the income of the estate allocable to each. [S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 342 (1954).]

It may be that sections 167(g) and 642(e) are *in pari materia*, as both parties argue, and thus that the legislative history of one is to be considered relevant to the other. But the fact that the Senate

---

[7] Deduction for Depreciation and Depletion.—An estate or trust shall be allowed the deduction for depreciation and depletion only to the extent not allowable to beneficiaries under sections 167(g) and 611(b).

Finance Committee Report on section 642(e) makes one statement concerning the estate provisions of section 167(g) while the same committee report on section 167(g) makes a conflicting statement, does not necessarily mean that we must accept the former and reject the latter.

We may look to the legislative history for assistance in statutory interpretation. *Brewer-Fay Investment Co.*, 39 T.C. 894, 905 (1963). And, as we observed in *Max Carasso*, 34 T.C. 1139, affd. 292 F. 2d 367 (C.A. 2), certiorari denied 369 U.S. 874, "it is now established beyond successsful challenge that a court may seek out any *reliable* evidence as to legislative purpose [emphasis supplied]." See also *Helvering* v. *City Bank Co.*, 296 U.S. 85 (1935).[8]

We have considered the legislative history regarding section 167(g) and found it to be obviously unreliable. The reports of congressional committees merely accompany a statute, which in turn becomes law only after surviving all of the steps of the legislative process. Such reports are to be used as interpretative of the statute, not to substitute for it. Nor is it to be presumed that a committee report has been drafted with more care than the statute itself.

The wisdom as well as the propriety of this approach to legislative history is exemplified by the committee report concerning the matter we are called upon here to resolve. As has been noted above, the report of the Senate Finance Committee is clearly inaccurate with respect to the provision dealing with apportionment of the depreciation deduction at the point where the report treats section 167(g). Does this give us reason to assume with confidence that the report's discussion of section 642(e) was given more careful attention? That it does not is pointed up by the discussion in the same committee's report of section 611(b)(4), the provision that was added by the Internal Revenue Code of 1954 concerning apportionment of the depletion deduction in the case of an estate. The critical language of section 611(b)(4) is the same as that of the last sentence of section 167(g), which was enacted at the same time, and section 611(b)(4) is the other section referred to along with section 167(g) by the words of that portion of the report dealing with section 642(e), quoted above. Significantly, the Senate Finance Committee Report merely says at the point where it treats section 611(b)(4):

Your committee has added to section 611 of the House bill a new paragraph to the effect that in the case of an estate, the depletion deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each. * * *

---

[8] In this case which, like the present one, involved two related provisions of the applicable tax statute, the Supreme Court said it was not at liberty to give effect to certain legislative history indicating the two provisions were in accord with each other where the provisions themselves were patently different.

S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 329–330 (1954).

Thus, the Finance Committee made directly conflicting statements in its report concerning allocation of the depletion deduction in the estate situation.[9] It is difficult to imagine any court resolving this conflict by saying that interpretation of section 611(b)(4) is to be governed by the Committee's discussion of section 642(e), when the differing discussion of section 611(b)(4) is consistent with section 611(b)(4) itself. We are equally unable to conclude that Congress intended a different interpretation of section 167(g) (depreciation) from the interpretation to be given section 611(b)(4) (depletion).

Entirely apart from our considerations of the enigmatic and conflicting legislative history regarding the last sentence of section 167(g) we observe that deductions, and the identity of those entitled thereto, are matters of legislative grace and that there is a logical reason for the Congress to have adopted differing rules as between trusts and estates, for the term or duration of a trust is usually much longer than that of an estate. Depreciation is the economic wasting away of an asset over a period of years (longer or shorter dependent on the age and character of the asset) and present income beneficiaries of such an asset may, or may not have an interest in whatever remains of that asset, if anything, at the end of the period of their entitlement to income. The allowable deduction for depreciation theoretically replaces what has wasted away, therefore it is apparent that any inequities (as between those entitled to present use or income and those deferred takers of the remainder) resulting from apportionment of the deduction solely on the basis of allocations of present income, would be magnified and aggravated by the length of time such condition existed. It is reasonable to believe that Congress was willing to relieve this aggravation for the longer term trusts but was unwilling to forego the easy, mathematical rule in the case of an estate.

The question to be decided here is narrowed, then, to that of whether the language of the last sentence of section 167(g), omitting as it does the reference to the pertinent provisions of the governing instrument contained in the sentence dealing with the case of a trust, entitles an estate (so distributing income) to the entire deduction for depreciation attributable to an asset if the executor has, by authority of the will, allocated to corpus amounts for depreciation of that asset. This question must be answered in the negative.

---

[9] A comment by the Supreme Court in one of the cases in which it has found that there could be no question as to the meaning of certain statutory language, and in which it consequently declined to look at the relevant legislative history, seems to be appropriate here. In *Wisconsin R.R. Comm.* v. *C.B. & Q. R.R. Co.*, 257 U.S. 563, 589 (1922), the Court said that such aids to statutory interpretation as committee reports "are only admissible to solve doubt and not to create it."

Were we interpreting the language "on the basis of the income * * * allocable to each" for the first time we might have some doubt as to whether the allocation of income referred to was intended to have reference to a purely mathematical concept or, in effect, a qualitative concept dependent upon trust accounting. If we were looking as a matter of first impression at the portion of the House Conference Report accompanying the 1928 Revenue Act quoted above, we might not be absolutely certain whether the explanation given there, that a trust is entitled to the entire deduction where the trustee is required to keep corpus intact by retaining an amount of income for that purpose, was intended as an example of the operation of that phrase of the trust provision of the statute referring to the "pertinent provisions of the instrument" or of the phrase "on the basis of the * * * income allocable to each." But we think any possible confusion over this matter has been resolved in favor of the former by the cases since the 1928 Revenue Act. See *John R. Upton*, 32 T.C. 301 (1959), affd. 283 F. 2d 716 (C.A. 9, 1960), certiorari denied 366 U.S. 911 (1961).

We therefore conclude that an allocation by an executor of a part of the income of an estate to corpus, in the form of additions to corpus or to a depreciation reserve, cannot entitle the estate to the entire depreciation deduction. Petitioner objects that such a conclusion in effect imposes on estates a Federal "estate and administration law." This is simply not true, however. We are concerned only with a Federal income tax statute, and our conclusion is that there is no necessary correlation, in the case of an estate, for purposes of the issue in this case, between the incidence of Federal income taxation and the allocations provided by the operation of either expressions of testators' intentions or State law for estate accounting purposes.

Petitioner makes the additional contention that the distributees of income from the residue of decedent's estate, of which the Nissen Building was a part, are not "heirs," "legatees," or "devisees" within the meaning of section 167(g), and hence that no part of the deduction for the depreciation of the Nissen Building is to be apportioned to them. Petitioner argues that these words were intended to be given the restricted interpretation of their technical meanings under the various State laws. But we conclude that the use of all of these terms by Congress merely evidences an intention to be all-inclusive by including all beneficiaries of an estate, whether the estate be testate or intestate, and whether the beneficiaries be entitled to realty or personalty. No necessary implication is derived from the statute that Congress intended differing State law meanings that may be attributed to these words to govern the effect of section 167(g), and we hold that the use of labels for purposes of State law is not determinative of what is included by words of the section. *Burnet* v. *Harmel*, 287 U.S. 103, 110 (1932) ; *Brewer-Fay Investment Co.*, *supra*.

The argument that the distributees of income from the residue of the estate were not entitled to any income unless the executor exercised its discretionary authority to make distributions to them raises a matter of no significance. The fact is that the authority was exercised in favor of these individuals in the years in question in the amounts respondent has determined to be allocable to them. The further argument that by a literal reading of Article VIII of decedent's will the executor is the only person who could be described as an "heir," "devisee," or "legatee" merits only our observation that the executor held only a legal title and had no beneficial interest in the estate.

Reviewed by the Court.

*Decision will be entered for the respondent.*